Good morning, your honors, and may it please the court. My name is Edward Piper, and I represent Mr. Richey. I'd like to take about nine minutes and try to reserve one minute for rebuttal. The court has asked the parties to address the question of whether, under the Prison Litigation Reform Act, the dismissal of Mr. Richey's complaint in this case counts as a strike, and I'd like to begin by offering just a brief comment on that issue. The statute provides that the three strikes provision comes into play only when there are three statutorily enumerated dismissals on three prior occasions, and that word prior is critical. We would urge the court to adopt the Solicitor General's opinion in the Coleman case, and hold that that word prior means a prior different proceeding. That makes practical sense and sense in terms of the way the statute is worded. If Congress intended otherwise, it would could have omitted the word prior from the statute entirely. It could have just said three occasions. That holding would make practical sense, too, because it would avoid what amounts to a very substantial limit on an inmate's ability to obtain appellate review of a third strike dismissal. Coleman reached the conclusion that after a third strike dismissal, while that's pending on appellate review, the inmate cannot file a new case, but it expressly declines to reach the question of whether an inmate, after a third strike dismissal, still could obtain inform-a-pauperous status for the purpose of challenging the third strike dismissal itself, which, of course, could result in a reversal and a reversal of the strike. I'd submit to the court that if Congress intended the severe result that the defendant is proposing, it would have spoken more clearly in the statute. And how severe is the result? Is the consequence of the result argued for by the other side only that he loses his IFP status, or is there more than that? That is the severity of the result, Your Honor. And obviously, for many prisoners, that is quite severe, given their financial resources. The amounts, for some people, would be pocket change, but for the prisoner, not necessarily so. It could be outcome determinative, yes. So unless the court has any further questions on that issue, I'll turn to the merits of Mr. Ritchie's case. This case concerns a grievance that was dismissed solely and for no other reason because the prison grievance coordinator found Mr. Ritchie's language to be unnecessary and inappropriate. Mr. Ritchie has plausibly alleged that that dismissal violated the First Amendment. It was a very simple, one-page document that he submitted to the defendant. It dealt with a single issue, and though I'd certainly admit his language was maybe a little coarse, as language sometimes tends to be in prisons, there was nothing threatening about the grievance, and there's no reason to believe that actually processing the grievance... was forbidden from commenting in slightly impolite terms on the weight of the guard, or can we simply say that that was an insufficient reason for rejecting the processing of the grievance? I would say that that is essentially the same holding, and I'm not quite... Well, I'm not sure, you see, because I think the prison is well within its sort of discretionary scope of operation to forbid the prisoners from saying certain disrespectful things toward the guards. And I don't think the prisoners have a First Amendment right to yell nasty things to the guards because that is in some respects undermining discipline. I'd certainly agree with that, Your Honor, but the key thing is that the application of the Turner factors is not the same, say, in the prison yard or in the mess hall as it is in the context of the grievance system. The court has held very clearly in the Brodheim case and the Bradley case that the prisoners' rights to file grievance, or at the very least to not have their access to an existing grievance, restricted for an unconstitutional reason. What I'd like to know is, and this is on your side of the case, I guess, but why isn't Bradley just clearly controlling? That Bradley means that the prison may have an interest in avoiding harsh language that offends guards, but the prison can set up a procedure to shield the guard from reading that language. Well, Judge Gould, I think Bradley is clearly controlling. There's a slight hiccup in the Turner and the Safley case because the Supreme Court has disapproved of the balancing method that the court used there. But this court recognized in the Cry case that the Supreme Court did not approve of the holding in Bradley, and in the Brodheim case, this court reaffirmed that holding. So getting back to your question, Judge Fletcher, the way that the Turner factors are applied differs depending on the context of where we are. My question is actually a fairly narrow one, or at least I intend it to be one. I'm reluctant to say that this is a First Amendment-protected speech when I could hold for your client on something other than a constitutional ground of protected speech. Well, so let me try putting it like this. I think the holding that I would ask the court to come to is not that Mr. Ritchie has a right to use disrespectful language in a general sense. What I'd suggest is that Mr. Ritchie has a right, or rather that the First Amendment prohibits the prison from conditioning his access to an existing grievance system. You know, you terrify me when you get me into the First Amendment and prisoners' rights when there's an easier ground. And I'm also wondering why we need to rely on the First Amendment to say that a prisoner has a right to file a grievance without some prison official taking the temperature of whether the prisoner has used language that's too harsh or something. Well, so I'm maybe not understanding the alternative grounds because Bradley and Cry were First Amendment cases. The right to file grievances was derived from the First Amendment. But on the alternative grounds that you're suggesting, Judge Fletcher, I would agree that that would be a fantastic holding and we would urge the court to reach it. The key thing is that wherever the right derives from, whether it's the First Amendment or another source, the sort of restriction that the defendant would want to impose here would have a drastic chilling effect on a prisoner's ability to file grievances. And Judge, well, this I think is where Bradley is clearly controlling. It dealt with hostile or regulation prohibiting hostile or abusive language. And what it held is that the line between hostile, abusive, and language that on the other hand is appropriate is just too hazy for a prisoner to reasonably know what is appropriate to include in a grievance and what isn't. Well, you get to a point where you're splitting hairs. Now, the language that we're talking about here is certainly not language that one would hope to see anyone in polite society use. I mean, I think he, but I think the problem here, not so much for you, is that what he was trying to do, he didn't know her name as I understand it. That's correct. And he was trying to describe her. And so in describing her, he describes her as an extremely obese person or Hispanic female or something like that. And I think it's the extremely obese is what we're worried about here, or at least the prison was worried about. That's correct. Had he said something like the heavyset guard, I don't know, would that pass muster? You see, this is where the problem is. He needs to describe her in some way, shape, or form. The short one, the tall one. I mean, I'm wondering where the line is here. And it seems like there is no question, as I think both Judge Gould and Judge Fletcher have pointed out, that prison officials have an absolute right, I think under our case law, to control offensive, threatening speech. Because it oftentimes directed toward guards and others, because it's a dangerous environment. And filing a grievance against a guard and then referring to them as a thief, whatever else is going on. I suspect you wouldn't be standing here if that was the kind of situation we had. No, and that is not the situation. And that's where you get into the First Amendment issues. That's exactly right. And just two brief points in response. I would disagree that prisons have an absolute interest in regulating speech in the context of the grievance process. First, in the Brodheim case, this court held on page 1272. I wasn't speaking just in terms of the grievance process. I was talking in the general context. Well, and the grievance process is the specific context. And that's very important to note in this case, because the prison's interest is diminished, given the nature of the right at issue. The final point I'll make is that to the extent that there are concerns about security, etc., there are obvious alternatives. Both Brodheim and Bradley recognized that screening the grievance from the guard at issue could alleviate any security concerns. We've taken you to the end of your time. Let's hear from the other side, but we'll give you a minute to respond. Thank you. Good morning, Your Honors, and may it please the Court. My name is Haley Beach, and I represent Mr. D. Dane, the defendant, and now appellee in this matter. The Court should affirm the district court for three reasons. First, Mr. Ritchie's right to grieve was not violated. Second, he experienced no retaliation. And third, even if this Court were to find that there was a constitutional violation, Mr. Dane is entitled to qualified immunity for his actions, because he could reasonably believe that his conduct of enforcing the grievance procedures, which were well established, was lawful. Counsel, can I ask you a question? It's kind of a follow-up to what I was talking with the opposing counsel about just a moment ago. What is the prison's interest in not just simply allowing this grievance to go forward, even though it might have contained some language that some might find objectionable? I mean, are they afraid that the guard is going to find out, and then the guard is going to get mad at the prisoner and retaliate in some way? Is that it? I mean, I'm having a hard time finding out in the grievance context where this danger is. Yes, Your Honor, and I think it would be helpful to sort of explain exactly what happened with regards to this grievance in order to explain the legitimate penological interests at play here. This was a grievance that Mr. Ritchie originally filed and was received by a different DOC employee. That employee instructed Mr. Ritchie to rewrite it and to stick to the who, what, and when of what happened, which is the direction that is clearly on the grievance form itself, and it says to be as concise as possible. It's concise. He says the extremely obese Hispanic female. He does, Your Honor, but I... He says four words. Correct. He apparently didn't know her name. He didn't know her name, but he did describe her by gender, ethnicity, and racial background, shift schedule, the location in the prison where she works, which is a very small part of the prison. So I don't think there was an issue with identity. However, the direction... I may have missed something. Did he know, in fact, know her name? I don't know for sure whether he knew her name or not, but he did describe her with a pretty high level of specificity. In four words, so he's concise. Now, there may be something else that's a problem, but concision, I think, is not the problem. Okay, Your Honor. I would like to just make clear that Mr. Dane's direction was to rewrite as directed, so to rewrite as Mr. Ritchie had already been directed because he submitted essentially the same grievance the second time. Well, what he directed basically is that extremely obese be admitted. Well, I think that his direction actually contained two directions. One, to rewrite as he had previously been directed, which was to just stick to the who, what, and when of the issue being grieved. And then he also stated that words like extremely obese were unnecessary, so unnecessary for the purposes of identification or anything else, and also inappropriate. And the grievance goes on to say, you know, it's no wonder why guards are slapped and strangled by some prisoners and that if this guard abused, didn't abuse her caloric intake so much, maybe, you know, she wouldn't have these problems with the inmates. And so I think it's more that language, which the original direction to rewrite was focused at and which Mr. Dane's subsequent direction was really focused at. He also, of course, included the extremely obese language just because it's, like you said, it's disrespectful, it's not very polite. But I think the real reason that the grievance needed to be rewritten was because it contained all this extraneous information, which was also, you know, disrespectful, and referenced a guard who had recently been murdered by a different inmate. Counsel, does the prison official, should they have the right to not process a grievance because they perceive that it's got disrespectful language? That sort of opens the door to let the prison official shut the door on any prisoner of grievance whenever they want to do that. No, Your Honor, but what happened here was that he simply told Mr. Ritchie to rewrite the grievance, to rewrite it in accordance with the established grievance procedure. And because Mr. Dane didn't do, you know, Mr. Ritchie refused that opportunity to rewrite, there was a five-day window in which he had to submit that rewritten grievance in accordance with the well-established grievance procedure, and Mr. Ritchie decided not to do that. And so after the five-day period, it became administratively withdrawn. And so Mr. Ritchie had the opportunity to comply with the prison grievance procedure, and he chose not to. Mr. Dane encouraged him to rewrite it so that it could be processed, and that was Mr. Ritchie's choice not to pursue it. And the prison's legitimate penological interest in having these rules regarding the grievance system is so that the grievance procedures can work the way they're intended, so that prisons can resolve disputes within their walls at the lowest level possible in a peaceable and efficient manner because that protects everyone, inmates, guards. It makes the review of these actions, should they reach courts, more efficient. That's a well-established interest that prisons have in Woodford v. Noe and all the exhaustion line of cases. So Mr. Dane's action of simply asking him to rewrite it so that it contained only the necessary information, so that it didn't have unnecessarily abusive and hostile and disrespectful language was within his parameters and within the goals of promoting efficient resolution of grievance. You know, as much as we try here to stay away from the First Amendment, the point is I think when he basically told your client, forget it, and reasserted the same complaint again, he was doing so in the belief that he had the right under the First Amendment to do so, saying what he wanted to say. Right, but Mr. Dane, as the prison grievance coordinator, has the right to enforce the prison's grievance procedure, and although Mr. Ritchie has the right to grieve, his right extends to the established grievance procedure in place at the prison, and all Mr. Dane was trying to do was enforce those procedures so that... So what you're suggesting to us is that we have to balance his assertion of his First Amendment rights against the prison's right to control the grievance procedure. I wouldn't say balance it because that approach was overruled in Shaw. I would say that as long as... That's what I'm asking you. Yeah, so I would say as long as Mr. Dane has a legitimate penological interest in enforcing these procedures, Mr. Ritchie's right as an inmate to his First Amendment expression is understandably limited. That's well established that the First Amendment can be limited in certain circumstances in prison as long as there's a legitimate penological interest being served, that that limitation is rationally related to that, and that the additional Turner factors are met. And because the prison has an interest in enforcing these procedural rules so that it can resolve disputes at the lowest possible level, Mr. Dane has, the prison has, an interest in enforcing those rules and making sure the prisoners follow them so that the system can work the way it's intended. Turning to the retaliation issue, Mr. Ritchie here suffered no adverse action. He was simply informed that he needed to rewrite the grievance. He chose not to do so. Additionally, this case is different from Brodheim or from Rhodes because what the court was really concerned about in Brodheim was not an actual regulation. It was a warning that the grievance coordinator included on a response. And actually, the inmate in Brodheim had several grievances denied, had a request for an interview denied, and the court never suggested that those procedural denials could somehow support a retaliation claim. What supported the retaliation claim there was the threat along with a separate memorandum in the record that indicated that the same correctional officer who made that threat had also attempted to have the inmate transferred. And those simply aren't the facts here. Additionally, the inmate in Rhodes had several of his grievances denied throughout the course of his dealings with the defendant, and that was also never considered as something that could support an adverse action under the retaliation standard. Additionally, as I said before, in the First Amendment right to grieve context, Mr. Dane was merely enforcing the prison grievance procedures, which prisons have a legitimate penological interest in enforcing. Therefore, Mr. Ritchie hasn't met his burden to prove the absence of a legitimate penological interest in the retaliation context. As I also stated before, because Mr. Dane was essentially just enforcing the prison grievance procedures, which he does thousands of times a year as the grievance coordinator, he could reasonably have believed that his direction to rewrite was constitutional, was lawful, and there was no clearly established law to put him on notice of anything to the contrary. I see I have one minute left, so I'd like to briefly address the Coleman v. Tollefson issue. Although Mr. Ritchie is correct that the court did not reach the specific issue that this court has asked us to address, that's because it was not before that court. What the court did address was what the statute literally says, what Section 1915G literally says. And it said that the statute literally says that a prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of appeal. And it held this because it said dismissal by a court means what it says. It means a dismissal by a single court. But that doesn't quite say that you lose your IFP if you're challenging that third dismissal. Well, it said that the judgment would take effect just like any other judgment. So unless there was a stay requested or something like that, the judgment would take effect and would need to be recognized by other courts. It doesn't make any sense to lose IFP status as you're appealing something that you say is wrong and you had IFP in the initial proceeding. You're now challenging the outcome of that proceeding. And until that proceeding has become final, not merely in the sense of appealable, but final in the sense that you get no more appeals available to you, I don't know whether that decision was right or wrong. And until I know it's right or wrong, I don't see how you can take his IFP away from him. Well, Your Honor, under the court's discussion in Coleman, it basically said that the statute literally means a dismissal by a court, not a dismissal plus subsequent appellate activity. They weren't addressing this question. They weren't specifically addressing this question, correct, Your Honor. It was not before them. Didn't they leave this question open? They did leave this question open. They left it open expressly, and we can't really read that opinion to say there's definitely a third strike here. What we can do is look at what the decision actually held, and what the decision held was that Section 1915G is clear, and this court recently held the same in Belonis v. Clark. Yeah, they say it's clear, and then they say, but this question is not clear and we don't decide it. Well, because it was not before the court, Your Honor. But here I would just say that the statutory interpretation that the court did in Coleman that this court has done in Belonis doesn't change simply because of the position that this court would be in now. Additionally, in enacting the three-strike statute, Congress always knew that there might be a prisoner out there who, because of his abusive litigation history, confronted a situation where maybe he wasn't able to challenge something IFP, and this is all that would happen to an inmate trying to appeal his third strike. Thank you, Your Honors. Thank you very much. We took the other side over. Let's put a minute on the clock. Thank you, Your Honor. I'd like to begin by taking another brief attempt at answering your question, Judge Fletcher, about whether we can reach a result in favor of Mr. Ritchie on broad or narrow grounds. Our position is that the narrowest grounds would be the First Amendment right to grieve rather than the First Amendment right to free speech, and I don't think I made that quite clear earlier. That's actually quite helpful to me. The conduct here was a burden on that right. It all derives from the First Amendment, but because the grievance wasn't processed, that's the injury that Mr. Ritchie is talking about. But you know, counsel, as opposing counsel pointed out, there was more here than just those few words. There was a lot of extraneous, somewhat inflammatory material contained within the body of his grievance about guards being killed if she didn't stop eating. This is one of the problems. I mean, it has nothing to do with the grievance. And does he have a right to grieve that? I doubt that. And so what did the defendant do here? Did he say, well, you're done? No. He said, no, just rewrite it and take out the extraneous material. And your client said, no, I guess I have a First Amendment right. I'm going to submit what I want to submit. Well, and the request to have him rewrite the grievance, Judge Ezra, is essentially a request that he acquiesce in what he is contending is unconstitutional conduct. That's First Amendment, isn't it? It's a First Amendment right to grieve. It's asking that he acquiesce in the denial of his grievance for an impermissible reason. But he gave him another chance to take the extraneous material out, and he chose not to do it. He just resubmitted it in exactly the same fashion. That's true. And I would rest on the first point I just made, but I'll make one more. To say that a prison is allowed to regulate material it deems to be extraneous or unnecessary is not workable in practice, because as in Bradley, inmates don't know when they're filing a grievance what that is. Although in this case, it seems to me it's entirely defensible if he does not know her name to identify her in impolite terms. Maybe it would be preferable if he said heavy set instead of extremely obese. But that one's, I think, fairly easy to give him a pass on. But when he has in the body of the grievance, if she would quit abusing calories or her calorie intake, that really does not have anything to do with what he's complaining about. Well, so, Your Honor, I'd point out first that the grievance itself was not in the four corners of the complaint. Mr. Ritchie did not attach it. And so in this procedural posture, it's inappropriate to consider the rest of it. But also, if you look at the grievances that were at issue in Brodheim and Bradley, they are very coarse. I mean, the prisons are coarse places. And the court has previously recognized that that's not a good enough reason to burden an inmate's right to file grievances. Thank you very much. Thank both sides. I note that Mr. Piper has done this pro bono, and the court would like to thank him. It's always very useful to have good work like this done on behalf of indigent or otherwise needy litigants. So thank you very much. Thank you both sides for arguments. You get paid, so I don't thank you in quite the same way. The case of Ritchie v. Dean is now submitted.
judges: Ezra, Fletcher, Gould